**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| SANDRA J N.[1],<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 1:25-CV-391-SJF |

**OPINION and ORDER**

Plaintiff Sandra J N. ("Ms. N") seeks judicial review of the Social Security Commissioner's decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This Court may enter a ruling based on the parties' consent under 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). [DE 13]. For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("SSA").

## I. OVERVIEW OF THE CASE

Ms. N protectively filed an application for DIB on July 6, 2022, alleging disability beginning March 16, 2022. (Administrative Record 20; hereinafter "AR"). She was denied initially, on reconsideration, and after a hearing before an administrative law judge ("ALJ"). (*Id.*). The ALJ issued an unfavorable decision on August 19, 2024.[2] (AR

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

[2] The ALJ's decision references a prior administrative decision, which was rendered on May 17, 2022. (AR 102). The ALJ stated that he would not be reopening that prior decision, and Ms. N does not make any

17). Ms. N then requested further review of the ALJ's decision, and the Appeals Council denied this request on May 9, 2025. (AR 1). Thus, the ALJ's decision became the final decision of the Commissioner. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. M timely filed suit in this court on July 12, 2025. This court has jurisdiction under 42 U.S.C. § 405(g).

## II. APPLICABLE STANDARDS

### A. Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based on his Residual Functional Capacity ("RFC");

arguments regarding this prior decision on judicial review. Thus, the Court will only address the ALJ's decision issued on August 19, 2024.

and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 404.1520. The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

**B. Standard of Review**

The Court has authority to review a disability decision by the Commissioner under 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of

credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). On the other hand, "[a]n award of benefits is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## III. Discussion

### A. Summary of the ALJ's Decision Denying Benefits

Ms. N's telephone hearing before the ALJ took place on June 18, 2024. (AR 20). Ms. N appeared along with an attorney representative. On August 19, 2024, the ALJ issued a

written decision finding that Ms. N was not disabled from March 16, 2022, through the date of the decision, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520. (AR 38).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. N had not engaged in substantial gainful activity since her alleged onset date of March 16, 2022. (20 C.F.R. § 404.1571 et seq.) (AR 23).

At Step Two, an ALJ's inquiry focuses on whether the claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ concluded that Ms. N suffered from the following severe impairments: chronic pain syndrome as well as degenerative changes and compression deformities of the thoracic spine. (AR 23). The ALJ thus concluded that these medically determinable impairments significantly limit Ms. N's ability to perform basic work activities as required by SSR 85-28. On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). The ALJ found that Ms. N had the following nonsevere impairments: cognitive changes, PTSD, and anxiety. (AR 23-24).

The ALJ concluded at Step Three that Ms. N does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526). The ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) and SSR 03-2p (cases involving reflex sympathetic dystrophy syndrome/complex regional pain syndrome). Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. N can perform her past relevant work based on her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ concluded that Ms. N retained the RFC to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b). The ALJ thus determined that Ms. M could perform light work except that she

> is limited to lifting, carrying, pushing, and pulling 10 pounds frequently and 20 pounds occasionally. [Ms. N] can sit at least 6 hours in an 8-hour workday and stand and/or walk 6 hours in an 8-hour workday. [Ms. N] should not climb ladders, ropes, or scaffolds. [Ms. N] can occasionally kneel, crouch, and crawl. [Ms. N] can occasionally bend and stoop in addition to what is required to sit. [Ms. N] can occasionally use ramps and stairs. [Ms. N] can perform the balance required of such activities. [Ms. N]

> should avoid work within close proximity to open and exposed heights and open and dangerous machinery such as open flames and fast-moving exposed blades.

(AR 28).

Based on this RFC, at Step Four, the ALJ found that Ms. N could perform her past relevant work as an inspector/hand packager. Thus, the ALJ did not move to Step Five of the analysis to consider whether Ms. N is able to perform other work existing in significant numbers in the national economy. *Young*, 362 F.3d at 1000. Even so, the ALJ also explained in a footnote that "[e]ven if [Ms. N] was limited to simple, routine tasks and instructions due to the anxiety/PTSD/cognitive changes, jobs would still remain in significant numbers in the national economy . . . such as housekeeping [], routing clerk [], and cashier . . .." (AR 37 at fn. 1). The ALJ thus determined that Ms. N was not under a disability, as defined in the Act, from her alleged onset date of March 16, 2022, through the date of the decision. (AR 37).

### B. Issues for Review

Ms. N contends that the ALJ failed to build a logical bridge from the evidence to his conclusion that certain limitations did not warrant inclusion in Ms. N's RFC: Ms. N's need to elevate her legs due to swelling/ edema, the impact of her obesity on her limitations, her need to lie down for her chronic pain and vertigo, and the use of ear and eye protection for her photophobia and phonophobia. Ms. N also challenges the ALJ's consideration of the consultative examiner's opinion. In response, the Commissioner contends that much of the evidence cited by Ms. N falls outside the relevant period,

which is from March 16, 2022, to August 19, 2024. On reply, Ms. N contends that an ALJ has a duty to review all evidence in the record, even if it predates the disability period.

For the reasons explained below, the Court finds that the ALJ's decision is supported by substantial evidence. The Court begins by addressing the parties' dispute about the timeframe of the evidence cited by Ms. N in her opening brief.

**C. Analysis**

**1. Pre-Onset Evidence**

As stated, the Commissioner initially responds to Ms. N's arguments by contending that she relies on evidence outside the relevant period and that Ms. N fails to "acknowledge the largely unremarkable evidence from the relevant time period . . .." [DE 24 at 5]. Ms. N disputes the sufficiency of this argument, contending that the ALJ must review evidence that pre-dates on the onset period. In support, Ms. N directs the Court to *Doherty v. Astrue*, No. 1:11-CV-00838-DML, 2012 WL 4470264 (S.D. Ind. Sept. 27, 2012). There, the Court observed that "[t]he Seventh Circuit and other circuits have ruled that an ALJ must consider 'all' evidence in the administrative record and, in fact, pre-onset evidence may be particularly relevant to assessing a claimant's degenerative condition post-onset." *Id.* at *5.

Ms. N is correct in her assertion that the ALJ has a duty to consider all evidence in the record. But she otherwise appears to miss the purpose of the Commissioner's argument on this point. The Commissioner did not raise this argument to defend the ALJ's failure to address pre-onset evidence or to contend that the ALJ did not need to consider pre-onset evidence. Indeed, the ALJ made no distinction between pre-onset

and post-onset evidence in the decision, and he addresses evidence—or the lack of evidence—throughout the record in the decision. The Commissioner's argument highlights the ALJ's finding that certain limitations failed to meet the duration requirement for impairments and that the ALJ based his decision on this lack of evidence. In any event, the Court confines its review to the ALJ's analysis, and as stated, the ALJ addresses evidence before the onset date in the decision. *See SEC v. Chenery*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). The Court thus proceeds with the substance of Ms. N's arguments for remand.

**2. Limitation Arguments Raised by Ms. N**

Ms. N primarily argues that the ALJ failed to include certain supported limitations in the RFC assessment. An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* The RFC is the ***most*** someone "can do despite their mental and physical limitations." 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1); SSR 96-8p(5) (emphasis added). The RFC is crafted based on "all the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p.

When crafting a claimant's RFC, an ALJ must follow a two-step sequential process to determine whether a claimant's symptoms can be accepted as consistent with

objective medical evidence and other evidence. First, the ALJ must determine whether there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms. Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *See* 20 C.F.R. § 416.929(a). The ALJ evaluates the intensity, persistence, and limiting effects of symptoms by considering a claimant's subjective statements and complaints related to their symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* 20 C.F.R. § 404.1529(a).

The ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish their capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(c)(4).

The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). This "analysis must say enough to enable a review of

whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

**a. Leg Elevation for Swelling/Edema**

Ms. N first challenges the ALJ's failure to include leg elevation as part of the RFC assessment. Ms. N contends that her need to elevate her legs is supported by the record and therefore should have been included. Ms. N testified about her leg swelling during her hearing with the ALJ, explaining that her legs swell daily, requiring her to wear compression socks and lie flat on her back with her legs on a pillow. Ms. N also contends that doctors explained to her that this would be a lifelong problem, and that edema was observed during her consultative examination in August 2023.

Here, the ALJ explicitly discussed Ms. N's swelling and alleged need to keep her leg elevated. The ALJ's discussion was as follows:

> The claimant alleges that she elevates her legs due to numbness and swelling. However, this is not documented as 12 months, not responsive to treatment, and as a required treatment. She alleges compression socks and even the need to lie down for 2-3 hours until symptoms subside, 1-2 days a week. However, this was not documented. The record does not reflect edema well amongst complaints and amongst clinical findings in February 2024, November 2023, October 2023, May 2022, September 2021, or July 2021 (B7F, B11F, B18F). In fact, when her representative was asked about the edema, counsel indicated he would get back to the agency with respect to evidentiary support outside of the one consultative evaluation. Little else is provided to establish such as long term, twelve months in duration, despite treatment. At the end of the hearing, counsel acknowledged that it is not well reflected in the more recent treatment notes. Counsel then obtained testimony that she just does not talk about such conditions to the providers. These facts do not create greater limitations of function.

(AR 36). Thus, the ALJ addressed Ms. N's complaints about swelling as well as her alleged need to elevate her legs and explained why the evidence—or the lack of evidence—did not support the need for this limitation. Despite this discussion, Ms. N disputes the ALJ's analysis that her swelling is not documented throughout the record.

Ms. N contends that swelling was noted throughout the record and, thus, leg elevation should have been included in her RFC. [DE 20 at 9, citing AR 796, 803, 1928, 2762, 6117, 6170, 6459, 8134, and 11312].

The Court begins by considering the evidence raised by Ms. N on review. The first two citations are treatment notes from December 2020 showing that Ms. N reported swelling to her provider. (AR 796, 803). The other references (AR 1928, 2762, 6117, 6170, 6459, and 8134) do reflect that swelling was observed on examination, but these records are from July 2020, August 2020, June 2021, July 2021, and June 2024 (with the June 2024 record dated about a week after the ALJ's hearing). But here, the ALJ's reasoning for not including limitations for Ms. N's swelling was because "[l]ittle else is provided to establish [it] as long term, twelve months in duration, despite treatment." (AR 36). The ALJ also asked Ms. N's representative about this gap in the evidence during the hearing. (AR 68-69). When asked where Ms. N's reports of edema could be found in the evidence between 2022 and 2024, Ms. N's counsel responded: "Let me see what I can do on that front, Your Honor. And we can come back to it if possible." (AR 69). Ms. N's citation to records on judicial review--with a three-year gap in their timeframe—do not conflict with the ALJ's reasoning or show a gap in the ALJ's logic.

An RFC need only include "a claimant's limitations supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). The ALJ explained why he did not think the record supported limitations for leg elevations, and the Court cannot "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner*, 478 F.3d at 841. Thus, the Court cannot find that the ALJ's

exclusion of leg elevation in the RFC warrants remand here. *See also Darlene C. v. Saul*, No. 19 CV 5059, 2020 WL 6447641, at *7 (N.D. Ill. Nov. 3, 2020)(affirming where ALJ addressed the claimant's alleged need to elevate her feet and explained why it was not incorporated into the RFC).

**b. Obesity**

Ms. N next alleges that the ALJ ignored an entire line of contrary evidence by failing to consider the impact of Ms. N's obesity on her impairments. Ms. N explains that her obesity was noted throughout the record, referencing treatment notes that recorded her BMI. [DE 20 at 10, citing AR 9402 (BMI of 33.69 noted in February 2024), AR 1050 (BMI of 35.76 noted in August 2020), AR 1171 (BMI of 35.76 noted in August 2020), 1429 (BMI of 35.76 noted in August 2020), and 11050-1 (referencing a history of obesity and recorded a BMI of 32.29 in March 2024)]. Ms. N contends that despite this evidence of her obesity in the record, the ALJ failed to address it in the decision.

SSR 19-2p "provide[s] guidance on how [the Commissioner] . . . evaluates obesity in disability claims." S.S.R. 19-2p, 2019 WL 2374244, at *1 (May 20, 2019). The ruling recognizes that "[p]eople with obesity have a higher risk for other impairments, and the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately." *Id.* at *2. SSR 19-2p also acknowledges that obesity "increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities." *Id.* at *4. Thus, an ALJ "must consider the limiting effects of obesity when assessing a person's RFC" and "explain how he reached his conclusion on whether obesity causes any limitations."

In support of remand, Ms. N contends generally that she "suffers from musculoskeletal limitations that are made worse by her obesity" and that the ALJ failed to consider this in the decision. [DE 20 at 11]. In response, the Commissioner does not dispute that the ALJ failed to address Ms. N's obesity but contends that the ALJ's failure does not warrant remand. Indeed, despite SSR 19-2p's requirements, "[a] failure to explicitly consider the effects of obesity may be harmless error." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). "[A]n ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work." *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015). That is the case here—beyond her generalized arguments that her obesity worsened her musculoskeletal limitations, Ms. N does not explain how her obesity limited her ability to work or how it impacted her impairments. Ms. N's arguments about the impact of her obesity are no more than speculative, and thus, insufficient for remand. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)("Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk."); *see also Martinez v. Comm'r of Soc. Sec.*, No. 2:25CV232 DRL-SJF, 2026 WL 2664054, at *4 (N.D. Ind. Sept. 10, 2026)(finding harmless error where claimant failed to explain how obesity worsened her impairments). Without more, the Court will not remand on this basis.

### c. Lying Down for Pain and Vertigo

Ms. N also contends that the ALJ erred by failing to address her need to lie down and rest to account for her pain and vertigo. Ms. N contends that the ALJ should have

considered how treatment recommendations that Ms. N lie down and rest would contribute to time off in her RFC.

But the ALJ did address Ms. N's testimony that she needed to lie down as well as her statements that she suffered from vertigo. (AR 29). The ALJ explained that, at the hearing, Ms. N testified she needed to lie down flat to relax her abdomen and that she had vertigo. (*Id.*). The ALJ then explained that he asked Ms. N's representative where her vertigo was documented in the record between 2022-2024, and counsel was "not sure" but that it might have been noted in 2022. (*Id.*). The ALJ thus explained that this alleged limitation was "not well documented through the medical treatment records" and declined to incorporate it into the RFC. (AR 29). The ALJ also noted that Ms. N denied having issues with vertigo during her consultative examination in August 2023.

Ms. N disputes the sufficiency of the ALJ's reasoning, contending that vertigo is documented throughout the record. In support, Ms. N directs the Court to records from December 2020, January 2021, and June 2024. [DE 20 at 12, citing AR 779, AR 1632, and AR 11311]. In a treatment note dated December 21, 2020, it says that Ms. N "stated that she has been told she has vertigo but has never been treated for it. Will try to get her in with vertigo specialist on one of her next sessions." (AR 779). A treatment note dated January 21, 2021, states that Ms. N "reports having more headaches and thinks her vertigo is back." (AR 1632). The note thus advises that Ms. N should "[c]onsider talking to PT about performing vertigo treatments again. [Ms. N] should continue to benefit from skilled therapy to address aforementioned deficits." (*Id.*). Finally, in a treatment note from June 2024, Ms. N's providers listed in a section titled "Subjective Complaints"

that Ms. N reported that "she will get dizzy when she moves to[o] quickly" and that "she will lie down and this will help with the dizziness." (AR 11311). Her provider also recommended lying down to help with pain during this visit. (AR 11312).

But these records do not suggest that the ALJ failed to build an accurate and logical bridge or that the ALJ ignored contrary lines of evidence here. The ALJ's analysis shows that he requested evidence from 2022 to 2024 at the hearing and that Ms. N's counsel could not produce it at that time. Though Ms. N contends that her need to lie down is documented throughout the record, the references she brings to the Court's attention are—as the ALJ's decision suggests—three years apart, with the first two records dated prior to 2022. These references do not show the ALJ "ignore[d] entire lines of contrary evidence" or had a gap in logic. Rather, the references appear to be consistent with the ALJ's analysis that vertigo was not documented in the record between 2022-2024. As stated, the RFC must only include "a claimant's limitations supported by the medical record." *Reynolds*, 25 F.4th at 473. Here, the ALJ addressed Ms. N's vertigo and stated why he did not believe it was supported by the record. Thus, the ALJ was not obligated to account for it in the RFC. *See, e.g.*, *Gregory M. v. Bisignano*, No. 2:25-CV-02150-RLH, 2026 WL 1382608, at *6 (C.D. Ill. May 18, 2026). Moreover, "[s]ubjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Here, as discussed, the evidence Ms. N points to on judicial review also appears to be treatment notes recording her self-reports of vertigo and the need to lie down. Ms. N bears the burden

of providing evidence establishing the degree to which her impairments limit her functional capacity. *See* 20 C.F.R. §§ 404.1512(a), 404.1545(a)(3). None of the records Ms. N replies upon here provide any limitations or restrictions. Without more, the Court cannot find that this argument warrants remand.

**d. Use of Ear and Eye Protection**

Ms. N next contends that the ALJ erred by failing to acknowledge Ms. N's providers' recommendations that she wear ear and eye protection for her photophobia and phonophobia. In support, Ms. N directs the Court to treatment records from September 2021. [DE 20 at 12, citing AR 9533 and AR 9535]. Treatment notes from an appointment with Dr. Eric Shoemaker on September 10, 2021, reflect that Ms. N presented with "headache with sensitivity to light and noise." (AR 9533). The notes further explain that "[n]ow that she is out more, her light and sound sensitivity is worse" and "[n]ormally she wears a visor." (*Id.*) The notes also reflect that "[s]he gets a headache from it, in the back of the neck" and that she "[w]alks away from it and it works." (*Id.*) In a section titled "Assessment/Plan," her provider discussed her photophobia and phonophobia and said, "neurological exam normal . . . [h]old on brain imaging at this time, as neuro exam was normal" and stated he "[r]ecommend[ed] eye and ear protection." (AR 9535). Ms. N contends that this recommendation warranted limitations added to her RFC assessment.

But the ALJ did acknowledge these medical records, explicitly stating that medical records from September 2021 showed that Ms. N had headaches with light and sound sensitivity. (AR 30). The ALJ also noted that photophobia and phonophobia were

diagnosed in these records but stated that "such are symptoms and not medically determinable impairments." (AR 30-31). The ALJ also noted that Ms. N's neurological exam was normal and that further imaging was held off for this reason. (AR 31).

The limiting impact of an impairment is the determinative issue in these proceedings. *See Melanie W. v. Saul*, No. 1:19-cv-403, 2020 WL 3056309, at *4 (N.D. Ind. June 2, 2020) (citing *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)(stating that the relevant inquiry "is not the existence of these various conditions . . . but their severity and, concretely . . . whether they have caused her such pain that she cannot work full time") and *Johnson v. Colvin*, No. 2:13-cv-138-PRC, 2014 WL 4722529, at *4 (N.D. Ind. Sept. 22, 2014) ("The mere diagnosis of an impairment does not establish that the impairment affects the individual's ability to perform basic work activities.")). While these records show that Ms. N presented with, and was diagnosed with, photophobia and phonophobia, that is, by itself, insufficient to show that limitations are warranted. Moreover, here, ALJ discussed relevant evidence related to Ms. N's photophobia and phonophobia as part of determining Plaintiff's RFC and explained why the evidence did not support further limitations. The ALJ did not specifically discuss the recommendation that Ms. N wear eye and ear protection, but the ALJ did discuss that her neurological examination was normal at this appointment and no further imaging was taken at that time. An ALJ need not discuss every piece of evidence presented; he must provide an accurate and logical bridge between the evidence and his conclusion. *Craft*, 539 F.3d at 673. Here, the ALJ explicitly discussed the September 2021 treatment note and explained why he did not believe the diagnosis required limitations.

Accordingly, he provided the requisite "logical bridge" here. *See Denton v. Astrue*, 596 F.3d 419, 425-26 (7th Cir. 2010); *see also O'Connor-Spinner*, 627 F.3d at 618.

In sum, these arguments appear to be no more than a disagreement with the conclusions drawn by the ALJ about the evidence in the record. But, as explained, the Court cannot reverse the ALJ's decision on this basis. *Skinner*, 478 F.3d at 841 ("When reviewing for substantial evidence, we do not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations."). Thus, the Court affirms the ALJ's decision to exclude these limitations from the RFC. The Court now turns to Ms. N's last argument in support of remand.

### 3. ALJ's Consideration of Consultative Examiner's Opinion

Finally, Ms. N also disputes the ALJ's analysis about the persuasiveness of the medical opinion rendered by the agency consultative examiner. The ALJ provided an analysis of the findings from Ms. N's consultative examination, which occurred in August 2023. The Court recounts the ALJ's discussion here:

> Following a consultative examination in August 2023, the examiner provided 14 diagnoses at the end of the report, which largely appear to mirror the initial 14 complaints the beginning of the report. During the consultative evaluation, the claimant alleged loss of appetite, fatigue, night sweats, headaches, dizziness, tinnitus, shortness of breath, cough, edema, palpitations, and chest pain. There was edema noted. However, despite complaints of shortness of breath and cough, the pulmonary exam was normal. Despite complaints of palpitations and chest pain, the cardiac exam was normal, and the NYHA classification was 0. Further, pulses were normal, and there was no ulceration or varicosity. Abdominal exam was normal. She portrayed 40/50 cervical and 70/90 lumbar flexion and some other reductions, but despite complaints or portrayals, she had negative straight leg raise. She had no assistive device; her gait was normal in speed and sustainability, and station was normal in speed and sustainability. Stability was unsteady but the example given was only with respect to heel walking. She portrayed reduced sensation to vibration and filament in the left upper and lower extremity. However, she had no deficits in fine finger skills with respect to using the hands, buttoning, zipping, tying shoes, opening a jar, picking up keys, gripping, grasping, shaking, or writing. The claimant could do such repetitively. She could make a fist, oppose fingers, pinch, and grasp with no deficits in hand/finger dexterity. Also, she still had normal ability to squat. She had negative straight leg raise, normal stamina, and normal posture. The claimant had no inflammation, swelling, stiffness or effusion. She had no abnormal motion and no deformity. She could effectively ambulate in a normal fashion. She had no atrophy, normal tone, normal strength, normal grips, normal upper extremity strength, normal lower extremity strength, normal deep tendon reflexes, normal Rhomberg's, normal proprioception and finger to nose testing, normal Babinski's and heel to shin test, normal sharp/dull testing, and normal light touch testing. The claimant's treatment consisted only of Aleve and Prozac (B9F).

(AR 33). The ALJ also addressed the persuasiveness of this opinion as required by agency regulations.

Under the applicable regulations, an ALJ "does not give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The regulations instead require an ALJ to explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Persuasiveness of a medical opinion is based upon several factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination,

purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; and specialization. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ found the consultative clinical findings to be persuasive. But Ms. N contends that the ALJ misstated or improperly cherry-picked the consultative examiner's report in the decision. Ms. N specifically challenges the following statement made by the ALJ in the decision: "Stability was unsteady but the example given was only with respect to heel walking." (AR 33). Ms. N explains that this statement is inaccurate, as unsteady was listed for her gait, station, ability to walk on heels, ability to walk on toes, and ability to tandem walk. Indeed, as Ms. N contends, the consultative examiner's report shows that her movements were unsteady in all tested categories. The Court includes the relevant portion of the examiner's report below:

FOR INDIVIDUALS WHO **DO NOT** HAVE **ASSISTIVE** DEVICE:

**Please describe patient's movements.**

(Please use descriptive terms such as: normal, ataxia, antalgia, circumduction, lurching, unsteady):

| | Speed | Sustainability | Stability |
|---|---|---|---|
| Gait: | Normal | Normal | Unsteady |
| Station: | Normal | Normal | Unsteady |
| Ability to walk on heels: | Normal but unsteady | | |
| Ability to walk on toes: | Normal but unsteady | | |
| Ability to tandem walk: | Normal but unsteady | | |
| Ability to squat: | Normal | | |
| Patient's cooperation: | **POSITIVE** | | |
| NOTES: | | | |

(AR 3214).

Ms. N contends that this factual misstatement makes the ALJ's decision internally inconsistent, warranting remand. The Commissioner concedes that the ALJ

misstated the consultative examiner's findings in the decision but contends that this does not warrant remand because the ALJ found the state agency reviewers' opinions to be persuasive and assessed an RFC consistent with their opinions. [DE 24 at 9].

It is true that "an internally inconsistent opinion by an ALJ is likely to fail to build a logical bridge between the evidence and the result." *Lothridge*, 984 F.3d at 1234. But, as the Commissioner contends, the ALJ also found persuasive the opinions rendered by the state agency reviewers, who reviewed the medical record, including the consultative examiner's report, when forming their opinions. The ALJ explained the persuasiveness of the state agency reviewers' opinions as follows:

> The State agency medical consultants limited the claimant to light work. The State agency medical consultants noted the fact that medical treatment records reflected unremarkable findings and the medical treatment records post-operative notes reflect the claimant was doing well. The State agency medical consultants opined that the consultative examiner's findings for limitation to at least standing/walking for 2 hours in an 8-hour workday and lifting/carrying less than 10 pounds frequently and over 10 pounds occasionally in the unoccupied upper extremity, was an opinion more restrictive than the findings. The undersigned again notes that the consultative examiner's findings were overall generally normal; the overall treatment records generally reflect normal findings (not reiterated here); and the consultative examiner's conclusions were just "the least" the claimant can do. The State agency medical consultants found the claimant could sit, stand, and/or walk 6 hours in an 8-hour workday; no use of ladders, ropes or scaffolds, and occasional climbing of ramps, stairs, stooping, kneeling, crouching, crawling and frequently balance; and the need to avoid hazards (B3A, B4A). The State agency medical consultants supported their findings, and it is persuasive because, not only did they support their findings with some citation, but their findings are also overall consistent with the consultative examiner's clinical findings, as well as the clinical findings, and reports in the treatment notes as well as discussed above.

(AR 35). Thus, even with the ALJ's misstatement about the extent of Ms. N's unsteadiness at the consultative examination, the ALJ's RFC determination is consistent with the medical opinion rendered by the state agency reviews. Ms. N does not challenge the ALJ's assessment of the state agency reviewers' medical opinion on

review, nor does she otherwise argue how the ALJ's factual misstatement shows that the RFC lacked substantial evidence. Any such arguments are considered waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1992); *Handford ex rel. I. H. v. Colvin*, 2014 WL 114173, at *11 (N.D. Ill. 2014) (applying *Berkowitz* to underdeveloped arguments in a social security appeal).

Thus, the RFC assessment still provides "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154. Without more, the Court cannot find that the ALJ's misstatement of this finding in the consultative examiner's report "compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021).

## IV. Conclusion

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 22nd day of September 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge